

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-5-2006

# Gagliardi v. Kratzenberg

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4602

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Gagliardi v. Kratzenberg" (2006). *2006 Decisions*. Paper 957.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/957

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-4602
_____

JOHN GAGLIARDI,

Appellant

v.

T. J. KRATZENBERG, ESQ., an individual;
KRATZENBERG & ASSOCIATES, INC., a close
Pennsylvania business corporation;
KEYSTONE MUNICIPAL COLLECTIONS, d/b/a
KEYSTONE COLLECTIONS, a fictitiously named
business entity; JOEL AARON KLEIN, an individual;
IRA WEISS, ESQ.; LLOYD H. FUGE, ESQ.

_____

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 04-cv-01693)
District Judge: Honorable David S. Cercone

_____

Submitted Under Third Circuit LAR 34.1(a)
MAY 19, 2006

Before:   FUENTES, VAN ANTWERPEN AND *ROTH, <u>Circuit Judges</u>.

(Filed June 5, 2006)
_____

OPINION
_____

_____
* Judge Roth assumed Senior Status on May 31, 2006.

PER CURIAM

John Gagliardi, proceeding pro se, filed a lengthy complaint to allege that attorneys, a law firm, and a municipal tax collection company had violated the Racketeer Influenced and Corrupt Organization Act ("RICO"). Defendants moved to dismiss Gagliardi's complaint because he lacked standing, or because any RICO claims were time-barred, among other reasons.[1]

The District Court ruled that Gagliardi lacked standing to pursue the purported RICO claims. In the alternative, the District Court held that even if Gagliardi had standing, the relevant RICO statute of limitations had expired.[2] Our review is plenary. See Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Upon review, we conclude that Gagliardi had standing to raise some of his claims, but that he presented them to the District Court too late.

---

[1]One Defendant moved for summary judgment in the alternative. The District Court notified Gagliardi that one pending motion was for summary judgment, and invited Gagliardi to file any response by March 11, 2005. (Order of Feb. 18, 2005.)

[2]The District Court also declined to exercise supplemental jurisdiction over any state law claims. Gagliardi claimed that "Defendants have also violated the state constitutional protections of your Plaintiff to uniform taxation and to the faithful performance of municipal functions without delegation to private interests." (Complaint ¶ 55.) Under the auspices of his labeled RICO complaint, he also alleged that "Defendants have usurped the role of state actors in performing municipal functions to an extent violating the federally protected rights of your Plaintiff under color of state law, 42 U.S.C. § 1983." In dismissing the complaint, the District Court also dismissed any § 1983 claim. However, Gagliardi only appeals from the decision relating to any RICO claims. (Notice of Appeal; Appellant's Informal Brief at ¶ 1.)

The constitutional and prudential components of standing must be satisfied before a litigant may seek redress in the federal courts. See UPS Worldwide Forwarding v. United States Postal Serv., 66 F.3d 621, 625 (3d Cir. 1995). Three components comprise the "irreducible constitutional minimum of standing": an "injury in fact" that is concrete and particularized and actual or imminent; a causal connection between the injury and the complained-of conduct; and a likely, not speculative, redressability of the injury through a favorable decision. See id. (citation omitted). Prudential standing requires that

> (1) a litigant "assert his [or her] own legal interests rather than those of third parties," (2) courts "refrain from adjudicating 'abstract questions of wide public significance' which amount to generalized grievances,'" and (3) a litigant demonstrate that her interests are arguably within "the zone of interest" intended to be protected by the statute, rule or constitutional provision on which the claim is based.

See id. (citations omitted).

Applying these concepts to the facts of this case, we conclude that Gagliardi lacked standing insomuch as he sought to assert the rights of others. His complaint largely revolved around alleged continuing wrongs relating to purportedly improperly calculated and assessed taxes on a plot known as Lot and Block 658-M-50 and/or 191 Wall Road in the Jefferson Hills Borough of Allegheny County.

Gagliardi owned the 47-acre 658-M-50 parcel from 1970 until he deeded it in 1973 to U.S. Industrial Fabricating, a company that he owned and operated. (Complaint ¶¶ 16-19.) Shortly thereafter, in 1974, he deeded most of the property to U.S. Industrial Fabricators, Inc., and a smaller 5-acre parcel (thereafter known as Lot and Block 658-M-75) to the McKeesport Industrial Development Authority. (Complaint ¶ 20.) At some

3

point before 1990, Dawn Gagliardi, Gagliardi's now ex-wife, succeeded to ownership of the larger parcel. Also, the Gagliardis' sons became additional owners of the property. In 1996, Dawn Gagliardi and the Gagliardis' sons deeded the property back to Gagliardi.[3] To the extent that Gagliardi complained of alleged wrongs in tax assessment and collection when the property was not his, or when he sought to vindicate the rights of his ex-wife, a person named Joseph C. Strinich, and the public (e.g., Complaint ¶¶ 36, 38-47, 130), he lacked standing. We do not consider Gagliardi's theory that he has standing as an "alter ego"/"reverse alter ego"/"Siamese twin" of U.S. Industrial Fabricators, Inc., as he did not present that theory to the District Court. See Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 116 (3d Cir. 1992). However, to the extent that Gagliardi brought a RICO claim on his own behalf for actions taken while he was owned the property in question, he had standing to proceed.

Nonetheless, the District Court properly dismissed Gagliardi's claims as time-barred. A four-year statute of limitations governs civil RICO claims. See Forbes v.

---

[3]There were some indications in the record before the District Court that Gagliardi had again become the owner of the property. For instance, Gagliardi suggested his renewed ownership in the parcel of land in response to a different motion, by including a print-out of an Allegheny County owner information sheet. ("Additional Memorandum of Authority" at Exhibit 5.) However, Gagliardi did not base his standing argument on his current ownership of the property. Ordinarily, we do "not consider new evidence on appeal absent extraordinary circumstances, such as those that render the case moot or alter the appropriateness of injunctive relief, a change in the pertinent law, or facts of which a court may take judicial notice." In re Application of Adan, 437 F.3d 381, 389 (3d Cir. 2006). We may take judicial notice of public records, such as the publicly recorded deeds that support Gagliardi's claim of ownership. Therefore, we take notice of the transfer of the parcel in question to Gagliardi in 1996. He remains the record owner of the property.

Eagleson, 228 F.3d 471, 483 (3d Cir. 2000).  The statute begins to run when a plaintiff knows or should know of his injury.  See id. at 484 (adopting the "injury discovery rule").

First, we consider the crux of Gagliardi's claim and asserted injury, for which he seeks at least $1.8 million in damages:

> The systemic imposition of erroneously calculated and unjustly assessed and unjustly collected taxes and fees per real property, along with the imposition of encumbrances that render the pledge of considerable property impossible, along with damages to your Plaintiff's cash flow and ability to continue a livelihood from businesses affected by the Defendants activities.

(Complaint ¶ 97.)   He alleged this following consequence of the purportedly improper taxation:

> The direct causal relationship between the injury and the RICO violation is because of the clouds and slanders of title placed upon the real property of the Plaintiff, your Plaintiff has been effectively disabled from using his property for business and personal loans as well as personal bail bond.

(Id. ¶ 87.)  Gagliardi also noted the following:

> [D]espite years of efforts to acquaint particular tax functionaries of the Defendants with the facts of the ongoing miscalculation of tax indebtedness, your Plaintiff has to perennially renew his explanations to subordinates who appear to acquire no background information from the enterprises used in the Defendants fraudulent scheme.

(Id. ¶ 98.)

Gagliardi described his purported injuries as occurring over years.  He alleged that the alleged improper tax assessments began in 1976.  (Complaint ¶ 24.)  Through his exhibits to his complaint, Gagliardi showed that delinquent tax liens were entered against

5

the property in 1996 through 1999, at least.  (Id. at Exhibit F.)  He received a scire facias sur delinquent tax claim in August 2000.  (Id. at Exhibit G.)  Furthermore, even before he took back title to the property in 1996, he was involved in disputing the tax assessments on behalf of his family members.  (Id. at ¶ 35.)  Therefore, through his allegations and exhibits, Gagliardi conceded that he knew or should have known of his injury more than four years before he filed his RICO complaint in November 2004.  Accordingly, the District Court properly dismissed Gagliardi's claims as time-barred.